WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bonnie T. Ramos, et al., | No. CV-17-00316-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Wells Fargo Home Mortgage, et al., | |
| Defendants. | |

Pending before the Court is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6). For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

In November of 1969, Bonnie T. Ramos ("Mrs. Ramos") purchased a home at 2340 W. Adams Street, Phoenix, AZ 85009.[1] (Doc. 9 at 3.) The home was financed with a VA loan Mrs. Ramos received from Colonial Associates Mortgage. (*Id.*) Mrs. Ramos was the only individual named on the loan, but her husband, Mr. Ramos, is also a named Plaintiff in this case. (*Id.* at 2.) Mrs. Ramos refinanced the loan first through Ace Mortgage Co. and again through WMC Mortgage in May of 2004. (*Id.*) In December of 2008, Mrs. Ramos requested a loan modification from Wells Fargo Bank ("WFB"), and

---

[1] The Court takes as true the allegations in Plaintiff's Complaint at this stage of the litigation. *See Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1991).

entered into a written agreement with WFB on or about August 20, 2009 ("2009 modification). (*Id.* at 4.) The 2009 modification was executed under the Home Affordable Modification Program ("HAMP") which decreased Mrs. Ramos's interest rate, but increased her monthly payments by several hundred dollars. (*Id.*; Doc. 19-1 at 2; 13-1 at 16.)[2] Mrs. Ramos informed WFB that she wanted the loan modification to decrease her monthly payment, not increase it. (*Id.*) In response, WFB advised her to accept the modification and reapply for another HAMP modification to receive a lower monthly payment, even though her finances had not changed since she first applied. (Doc. 9 at 4–5.) Mrs. Ramos alleges that from 2009 to 2016 WFB continuously told her that required documents for the HAMP application were either unsent or missing, despite her repeated assertions that she had sent the requested documents. (Doc. 9 at 5–6.) In May of 2016 WFB declined Mrs. Ramos' HAMP application. (Doc. 9 at 8.) Mrs. Ramos states that WFB told her HAMP rules prevented WFB from accepting any further payments until she prevailed on appeal. (*Id.* at 10.) Ramos alleges that WFB told her that she would have to be in default for a period of three months before she could appeal the denial. (*Id.* at 19). Mrs. Ramos attempted to make her monthly payments as of July of 2016, but WFB has refused to accept them. (*Id.*) In September of 2016, Mrs. Ramos learned WFB had initiated foreclosure proceedings. (*Id*. at 11.)

Plaintiffs commenced this action against WFB in Superior Court on or about January 10, 2017. (Doc. 1.) WFB removed the action to this Court on January 31, 2017.

---

[2] When considering a motion to dismiss, a court will generally only look to the face of the Plaintiff's complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, a court may also look to documents that are "incorporated by reference" in the complaint as well as documents that are part of the public record, such as a deed of trust. *Id.*; *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). The loan modification of 2009 was referenced throughout the FAC. It was attached to the pleadings and no party contests its authenticity. *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005). Likewise, the deed of trust is a public record and it was referenced in the FAC. Therefore, both are properly before the Court.

(*Id.*) In Plaintiffs' First Amended Complaint ("FAC"), Plaintiffs allege four claims for relief. First, Plaintiffs allege WFB tortiously breached the Implied Covenant of Good Faith and Fair Dealing by (1) not complying with HAMP regulations or the Consent Order from the Department of the Treasury outlining standard mortgage servicing practices, and (2) providing them with false information regarding HAMP's loan application and appeal process. (Doc. 9 at 12–16.) Second, Plaintiffs allege WFB negligently breached the Arizona Good Samaritan Doctrine by (1) misleading them into modifying their existing loan instead of applying for a new loan, (2) improperly administering the first HAMP application by offering a loan modification that raised their monthly payments, (3) improperly advising Plaintiffs that they needed to default on their loan in order to appeal the denial of their HAMP application, and (4) unjustifiably denying her HAMP re-application after seven years. (*Id.* at 17–22.) Third, Plaintiffs allege that WFB engaged in negligent or intentional misrepresentation by luring Mrs. Ramos into accepting the 2009 modification while advising her to reapply for another modification, as it knew that any such reapplication was futile. (*Id.* at 23.) The FAC alleges that Mrs. Ramos relied upon WFB's representations, and that if she had known that a new modification was impossible, she would have defaulted on her loan earlier rather than continue to make payments. (*Id.* at 23–24.) Fourth, the FAC alleges that WFB tortiously breached the Truth in Lending Act ("TILA") by: (1) failing to provide Mrs. Ramos with a Truth in Lending Statement or similar disclosure detailing the cost of the HAMP payments, (2) failing to disclose information regarding WFB's finance charges, and (3) changing the amounts and demanding additional payments via phone conservations and not in writing. (*Id.* at 25–30.) The Plaintiffs seek monetary and declaratory relief that WFB is liable for the tortious conduct outlined in the FAC, and that a Cancellation of Notice of Trustee Sale be recorded with in the Maricopa County Recorder's office."[3] (Doc. 9 at 32.) In response, WFB filed the instant motion to

---

[3] In her Response, Mrs. Ramos references an additional claim not alleged in the FAC for a breach of the Arizona Consumer Fraud Act. (Doc. 19 at 11.) This claim was

dismiss.

**DISCUSSION**

**I.    Legal Standard**

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6) a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). In deciding a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true, in addition to the reasonable inferences that can be drawn from them. *Id.*

**II.    Analysis**

**A.    Mr. Ramos's Claims**

The Complaint states that Mr. Ramos "sues in his individual capacity for non-community damages," but the Complaint does not provide any facts indicating that Mr. Ramos was damaged in his non-community capacity. (Doc. 9 at 2.) Mr. Ramos has not alleged any "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged against Mr. Ramos in a non-community capacity." *Ashcroft v. Iqbal*, 556 U.S. at 678. Therefore, such claims are dismissed.

**B.    Tortious Breach of Implied Covenant of Good Faith and Fair Dealing**

Arizona law "implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986). This covenant

---

not pled in the FAC, the Defendant did not move to dismiss it in its Motion to Dismiss, and thus the Court will not address it in this order.

imposes a duty on both parties to ensure that "neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.* Generally, this cause of action arises as a matter of contract law, not tort law. However, if there is a special relationship between the two parties, a plaintiff can seek relief as a matter of tort law.[4] *McAlister v. Citibank (Arizona), a Subsidiary of Citicorp*, 171 Ariz. 207, 213, 829 P.2d 1253, 1259 (Ct. App. 1992). A special relationship arises between parties where there is a "fiduciary relationship, elements of public interest (e.g., unequal bargaining positions), or adhesion." *Id.*

Mrs. Ramos alleges that WFB engaged in a host of bad faith behaviors while considering her application for modifying the 2009 modification. However, she does not allege any facts that indicate the existence of any contract entitling her to a loan modification following the 2009 modification. Instead, she relies on her 2009 modification contract, which does not mention any right to a subsequent modification. WFB could not have breached the covenant of good faith and fair dealing during negotiations for a new modification absent the presence of a contract that included, at the least, an implied right to subsequent modification as a benefit of the contract. *See Weisman v. Capital One NA*, No. CV-15-00657-PHX-GMS, 2016 WL 558416, at *3 (D. Ariz. Feb. 12, 2016); *Hunter v. CitiMortgage, Inc.*, No. CV 11-01549-PHX-FJM, 2011 WL 4625973, at *3 (D. Ariz. Oct. 5, 2011) ("Plaintiffs have not pled the existence of a separate enforceable contract to negotiate for a loan modification in good faith, and thus any claims alleging a violation of good faith and fair dealing arising from the loan modification negotiations fail."). Mrs. Ramos has not alleged the existence of any such contract, and thus her first claim fails.

To the extent that Mrs. Ramos alleges that WFB may be liable for breach of the

---

[4] A debtor-creditor relationship generally does not create a special relationship under Arizona law. *See McAlister v. Citibank (Arizona), a Subsidiary of Citicorp*, 171 Ariz. 207, 213, 829 P.2d 1253, 1259 (Ct. App. 1992) (finding no special relationship between a debtor and a creditor). This presents an additional reason to dismiss Mrs. Ramos's claim.

implied covenant of good faith and fair dealing due to violations of HAMP or the April 2011 Consent Order with the Office of the Comptroller, her claim also fails. Mrs. Ramos does not allege that she was a party to the consent order, and thus it cannot form the basis of her claim. Furthermore, it is well established that HAMP does not provide individual borrowers with a private right of action. *See Marks v. Bank of America, N.A.*, No. 03:10-CV-08039-PHX-JAT, 2010 WL 2572988 (D. Ariz. 2010); *see also Ruvalcaba v. Citibank CitiMortgage, Inc.*, No. CV-12-4655-JFW(AJWX), 2012 WL 12894753, *3 (C.D. Cal. 2012) (collecting cases). "A party cannot circumvent the lack of a private right of action by filing a breach of contract claim based on third party beneficiary status when the statute does not demonstrate any intent to allow beneficiaries to enforce those terms." *Id.*; *see also Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S. 110, 118 (2011) ("The absence of a private right to enforce the statutory ceiling price obligations would be rendered meaningless if 340B entities could overcome that obstacle by suing to enforce the contract's ceiling price obligations instead."). Therefore, Mrs. Ramos's claim for breach of the implied covenant of good faith and fair dealing is dismissed.

### C. Breach of the Arizona Good Samaritan Doctrine

Pursuant to Arizona's Good Samaritan Doctrine, "a party may be liable for negligent performance of an assumed duty by either: (1) increasing the risk of harm to another, or (2) causing another to suffer harm because he or she relied on the party exercising reasonable care in undertaking the duty." *Steinberger v. McVey ex rel. Cty. of Maricopa*, 234 Ariz. 125, 137, 318 P.3d 419, 431 (Ct. App. 2014). Therefore, to state a claim, a plaintiff must allege facts indicating an increase in the risk of harm or reliance on the Defendant's decision to assume the duty at issue. *Id.* Mrs. Ramos alleges that WFB increased her risk of economic harm.

Mrs. Ramos alleges that WFB told her that she had to default on her loan to appeal the denial of her loan re-modification. (Doc. 9 at 19.) Mrs. Ramos also alleges that if WFB had been honest with her, she would have either obtained a new loan with another lender, or defaulted on her loan with WFB earlier, rather than making seven years of

payments only to be denied, required to default to appeal the denial, and to now face foreclosure as a result. (*Id.* at 23.) Thus, she adequately alleges that WFB increased the risk of economic harm to her through its negligent undertaking, lack of candor and misrepresentations. In *Steinberger*, the Arizona Court of Appeals found that a plaintiff could state a claim under the Good Samaritan Doctrine where

> (1) a lender, or its agent/representative, induces a borrower to default on his or her loan by promising a loan modification if he or she defaults; (2) the borrower, in reliance on the promise to modify the loan, subsequently defaults on the loan; (3) after the borrower defaults, the lender or its agent/representative negligently processes or fails to process the loan modification, or due to the lender/agent/representative's negligence, the borrower is not granted a loan modification; and (4) based on the default, the lender subsequently forecloses on the borrower's property.

*Steinberger v. McVey ex rel. Cty. of Maricopa*, 234 Ariz. 125, 138, 318 P.3d 419, 432 (Ct. App. 2014). Such is the case here, thus Mrs. Ramos's claim will not be dismissed.

WFB argues that Mrs. Ramos cannot demonstrate that she reasonably relied on WFB's promise of a new re-modification, as her application remained pending throughout this time period. However, *Steinberger* clarified that under the increased risk of economic harm theory, a plaintiff is "not required to allege reliance on [WFB's] loan modification program." *Steinberger*, 234 Ariz. at 138. Therefore, Mrs. Ramos's claim is not dismissed.

### D. Intentional Misrepresentation

To state a claim for intentional misrepresentation, the plaintiff must allege

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the listener's reliance on its truth; (8) the right to rely on it; and (9) his consequent and proximate injury.

///

*Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 494, 803 P.2d 900, 905 (Ct. App. 1990).[5] This claim requires the plaintiff to allege falsity, and thus Federal Rule of Civil Procedure 9(b) applies. *See* Fed. R. Civ. P. 9(b) (setting the particularity standard for claims rooted in fraud or mistake).

Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requires that the party alleging fraud to include an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California,* 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations omitted). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Ms. Ramos complied with Rule 9(b). Her complaint establishes a time-line of events leading up to her application's eventual rejection that satisfy Rule 9(b)'s pleading requirements. (Doc. 9 at 6–10.) Mrs. Ramos alleged that beginning in September of 2009, employees from WFB called her to request documents that Mrs. Ramos already gave them. (Doc. 9 at 7.) Mrs. Ramos also alleged that in December of 2009, her account was transferred to a Ms. Megan Lynch, who spent the next three years claiming that WFB needed additional documentation until finally admitting that WFB was waiting

---

[5] Mrs. Ramos does not distinguish her negligent misrepresentation claim from her intentional misrepresentation claim. However, to the extent that she raises a negligent misrepresentation claim, that claim is dismissed because, as discussed above, there is no contract between Mrs. Ramos and WFB establishing that WFB had any duty to Mrs. Ramos while negotiating for a new modification. A plaintiff seeking to recover under a negligent misrepresentation theory of liability must establish that such a duty exists. *PLM Tax Certificate Program 1991–92, L.P. v. Schweikert*, 216 Ariz. 47, 50, 162 P.3d 1267, 1270 (Ct. App. 2007) (The plaintiff must also allege that "the person charged with negligent misrepresentation must have owed a duty to the injured party."). Thus, the negligent misrepresentation claim is dismissed.

on the government to respond. (*Id.*) According to Mrs. Ramos, this was a lie, as lenders such as WFB approved HAMP applications, not the government. (*Id.*) Mrs. Ramos also alleges that the letters WFB sent her in September and December of 2014 continued to request more information from her. (*Id.* at 8.) Mrs. Ramos was not notified that she was not eligible to receive an additional HAMP loan on the same property until May 12, 2016. (*Id.*) Mrs. Ramos alleges that WFB, by virtue of its position, had to know that she could not qualify for a HAMP loan long before 2016, and continued to take her payments anyway. (*Id.* at 8–9.) Likewise, WFB had to know that any appeal effort on Mrs. Ramos's part was futile, and yet it encouraged her to continue on with the appeal process despite this. (*Id.*) As a result, Mrs. Ramos alleges that she continued to make payments to WFB until it refused to continue to accept them. (*Id.* at 10.) Three months later, WFB sent Mrs. Ramos a Debt Validation Notice and a Notice of Trustee's Sale of her home. (*Id.* at 9.) These facts, as alleged, are specific enough to place WFB on notice of the conduct that forms the foundation of the alleged misrepresentation, and thus Mrs. Ramos's complaint complies with Rule 9(b). *See Bly-Magee,* 236 F.3d at 1019.

Even assuming Defendant is correct in asserting that the 150,000 dollars Mrs. Ramos continued to pay as part of the trial modification payments cannot be claimed as damages, Mrs. Ramos also alleges that WFB's misrepresentations had a detrimental impact on her credit score and resulted in a loss of equity. At this stage in the proceedings, such allegations are sufficient to allege damages.

"A claim for intentional misrepresentation must be brought within three years after the cause of action accrues." *Bank of the W. v. Estate of Leo*, 231 F.R.D. 386, 390 (D. Ariz. 2005). However, under Arizona law, a cause of action for intentional misrepresentation "shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." A.R.S. § 12-543; *see Bank of the W.*, 231 F.R.D. at 390 ("The statutes of limitations for both negligent and intentional misrepresentation begin to run when the plaintiff knew or by reasonable diligence should have known of the misrepresentation."). Furthermore, "[w]hen a motion

to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

Mrs. Ramos does not contest that much of the conduct that forms the basis for her intentional misrepresentation claim occurred more than three years ago. However, she asserts that pursuant to the so-called "discovery rule," the cause of action did not accrue until she, acting with "reasonable diligence could have learned of the fraud, whether or not [she] actually learned of it." *Coronado Dev. Corp. v. Superior Court of Arizona In & For Cochise Cty.*, 139 Ariz. 350, 352, 678 P.2d 535, 537 (Ct. App. 1984). Mrs. Ramos contends that she did not know of WFB's misrepresentations until she met with her lawyer in September of 2016. Yet, the standard does not limit its inquiry to when the plaintiff actually learned of the misrepresentations; the cause of action accrues when she could have learned of the fraud in the course of reasonable diligence. Pursuant to her FAC, WFB told Mrs. Ramos that it would not accept any additional payments from her until her appeal was successful in May of 2016. (Doc. 9 at 10.) Mrs. Ramos alleged that she had to appeal HAMP decisions several times over the years, and the appeals never interfered with her ability to make payments prior to this occurrence. (*Id.*) Therefore, May of 2016 is likely the point at which a person, acting with reasonable diligence, could have identified that something was wrong. However, for the purposes of this motion, either time places the filing of Mrs. Ramos's FAC well-within the three year statute of limitations. If the facts as Mrs. Ramos alleged them are true, then she may be able to prove that the statute of limitations did not begin to run until 2016, and thus the motion to dismiss the intentional misrepresentation claim is denied. *See Jablon*, 614 F.2d at 682.

### E. Breach of the Truth in Lending Act ("TILA")

Mrs. Ramos contends that WFB breached the TILA during both the 2009 modification as well during the negotiation process for the proposed re-modification of Mrs. Ramos's loan. TILA was created by Congress "to assure a meaningful disclosure of

credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601. To that end, "[t]he statute requires, among other things, disclosure of finance charges, the "cost of credit as a yearly rate," and information about adjustable interest rates." *Carter v. Bank of Am., NA*, No. EDCV-15-1474-MWF(DTBx), 2015 WL 12732427, at *4 (C.D. Cal. Oct. 22, 2015) (quoting U.S.C. § 1638(a)). Mrs. Ramos contends that WFB violated the statute by failing to provide the required disclosures.

However, the TILA does not apply to loan modifications such as Mrs. Ramos's 2009 Modification. *See Diamond v. One West Bank*, No. CV-09-1593-PHX-JFM, 2010 WL 1742536 (D. Ariz. 2010) ("[A] loan modification does not require additional TILA disclosures, particularly where no new monies are advanced." (citing 15 U.S.C. § 1634(e)(2)); *see also Carter*, 2015 WL 12732427 at *4 ("TILA's disclosures requirements were not triggered because the [l]oan modification was neither a refinancing nor an extension of new credit."). The 2009 Modification reduced Mrs. Ramos's interest rate and revised her monthly payment on her existing loan. Therefore, it is excluded from the definition of refinancing under the TILA statute, and thus it is not governed by TILA. *See* 12 C.F.R. § 226.20(a)(2) (excluding "[a] reduction in the annual percentage rate with a corresponding change in the payment schedule" from the definition of refinancing); *Beck v. Wells Fargo Bank, Nat'l Ass'n*, No. 5:11-CV-00663-EJD, 2011 WL 6217345, at *3 (N.D. Cal. Dec. 14, 2011) ("Loan modifications and workout agreements do not trigger new TILA obligations").

Furthermore, even if the 2009 modification was covered by TILA, Mrs. Ramos's claims fall far beyond the one year statute of limitations. TILA has a one year statute of limitations, which runs from the date of the violation. 15 U.S.C. § 1640(e). The loan modification agreement was executed in 2009. The last violation Mrs. Ramos alleges is an improper alteration to her payment plan in 2012. (Doc. 9 at 28.) Therefore, whatever TILA claims Mrs. Ramos had to bring are untimely. Mrs. Ramos herself appears to

concede this, as she does not argue against the dismissal of her TILA claim in her responsive briefing. (Doc. 19.) Therefore, the TILA claim is dismissed.

### F. Declaratory Relief

Defendants' sole argument for dismissing Mrs. Ramos's request for declaratory relief relies upon the assumption that her other claims fail. This is not the case. Thus, the Court will not dismiss Mrs. Ramos's request for declaratory relief at this time.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 13) is granted in part and denied in part as follows:

1. Count One alleging tortious breach of the implied covenant of good faith and fair dealing is **DISMISSED.**

2. Count Two alleging negligent performance of an undertaking, also known as a violation of Arizona's Good Samaritan Doctrine, is **NOT DISMISSED.**

3. Count Three alleging negligent or intentional misrepresentation is **DISMISSED** only as to the negligent misrepresentation claim. The intentional misrepresentation claim survives.

Count Four alleging a tortious breach of the TILA is **DISMISSED.**

Dated this 11th day of September, 2017.

Honorable G. Murray Snow
United States District Judge