WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bonnie T. Ramos, et al., | No. CV-17-00316-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Wells Fargo Home Mortgage, et al., | |
| Defendants. | |

Pending before the Court are Defendant Wells Fargo Home Mortgage's Motion for Summary Judgment (Doc. 43) and Plaintiff Bonnie Ramos' Cross Motion for Summary Judgment (Doc. 66). For the following reasons Wells Fargo's motion is granted in part and denied in part. For the same reasons, Ramos' motion is denied.[1]

## BACKGROUND

Since there are two opposing motions for summary judgment here, the Court "evaluate[s] each motion independently, giving the nonmoving party in each instance the benefit of all reasonable inferences." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2015) (citation and internal quotation marks omitted).

In November 1969, Bonnie Ramos purchased a home in Phoenix. (Doc. 9 at 3). She financed the purchase with a VA loan she received from Colonial Associates

---

[1] Plaintiff has requested oral argument. The request is denied. The parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

Mortgage. (*Id.*). She refinanced the loan multiple times—first through Ace Mortgage Co., and then again through WMC Mortgage. (*Id.*). In 2008, Ramos was having difficulty making payments on the loan, so she signed a forbearance agreement with Wells Fargo Bank, the then-current servicer of the loan. (Doc. 9 at 3). That agreement set forth a new payment schedule.

When Ramos failed to make payments under that agreement, Wells Fargo instituted foreclosure proceedings. Several parts of the rest of the story are contested by the parties. A trustee sale was held, and U.S. Bank purchased the property. (Doc. 67-6 at 1). Apparently then changing its mind, Wells Fargo offered Ramos a loan modification (the "first modification") and filed, or misfiled, an affidavit of rescission of the trustee's sale with the Maricopa County Recorder's Office. (Doc. 44-4 at 2–3).[2] The modification lowered the interest rate on the loan but raised the monthly payment because arrearages were capitalized to bring the loan current. According to Ramos, the reason she signed the first modification, increasing her monthly payment when she already could not afford her current monthly payment, was because Wells Fargo told her that she could immediately get a second modification that would then lower her monthly payment.

Ramos contends that the first modification was a "HAMP" modification under the federal Home Affordable Modification Program, or that Wells Fargo told her it was. Wells Fargo denies this and argues that it was simply an in-house modification. Ramos also contends that she filed a second HAMP application almost immediately; Wells Fargo claims that Ramos did not file the HAMP application until 2014. In any event, Ramos did not immediately receive a second modification on the loan (either in-house or HAMP), and made payments on the first modification for several years. Regardless of when the HAMP application was submitted, in October 2014 Wells Fargo advised Ramos that, based on the financial information she had submitted, she did not qualify for a HAMP modification. In response, Ramos submitted another HAMP application with additional information. As

---

[2] Ramos testified that she was given a copy of the documents showing that the foreclosure sale had been rescinded. (Doc. 44-1 at 24–25).

part of this application, Ramos stated that she had never received a HAMP modification on any other loan or property. Apparently relying on that certification, Wells Fargo offered Ramos a HAMP Trial Period Plan in March 2015. Ramos made payments under that plan.

A Department of the Treasury audit of Ramos' HAMP application subsequently informed Wells Fargo that Ramos had in fact already received a HAMP modification on a different loan or loans.[3] Wells Fargo therefore denied Ramos' HAMP application and cancelled the Trial Period HAMP assistance she was then receiving. Ramos again became unable to make payments. Wells Fargo again instituted foreclosure proceedings and recorded a Notice of Trustee's Sale in September 2016.

Ramos filed this action in Maricopa County Superior Court. Wells Fargo removed the action to this Court in January 2017. (Doc. 1). This Court granted Wells Fargo's Motion to Dismiss in part. (Doc. 24). Wells Fargo now moves for summary judgment on Ramos' remaining claims. (Doc. 43). Ramos filed a cross motion for summary judgment on those same claims. (Doc. 66).

**DISCUSSION**

**I.      Legal Standards**

A principal purpose of summary judgment is to identify factually unsupported claims and dispose of them. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

/ / /

/ / /

---

[3] In 2016, borrowers were only eligible for a single HAMP modification.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are then required to "cit[e] to particular parts of materials in the record" that either establish a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. Pro. 56(c)(1). If the non-moving party's opposition fails to do so, the court is not required to comb through the record on its own to come up with reasons to deny a motion for summary judgment. *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citing *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).

**II. Analysis**

**A. Wells Fargo's Motion for Summary Judgment**

Wells Fargo moves for summary judgment on all of Ramos' claims. Ramos bases her claims on multiple theories. There are genuine disputes of material facts regarding at least one theory for Ramos' Good Samaritan claim.

**1. Good Samaritan Claim**

Arizona recognizes the "Good Samaritan Doctrine," under which a party may be liable for the negligent performance of an undertaking. *Steinberger v. McVey ex rel. County of Maricopa*, 234 Ariz. 125, 137–38, 318 P.3d 419, 430–31 (Ariz. Ct. App. 2014). A party may be liable by either "(1) increasing the risk of harm to another, or (2) causing another to suffer harm because he or she relied on the party exercising reasonable care in undertaking the duty." *Id.* at 137. Ramos sufficiently alleged an "increased-risk-of-economic-harm" claim, and to establish the claim she must show that (1) Wells Fargo undertook to render services to Ramos "that [it] should have recognized were necessary for the protection of [her] property"; (2) the risk of harm to Ramos increased because Wells Fargo failed to exercise reasonable care while rendering those services; and (3) Ramos was harmed because of Wells Fargo's actions. *Id.*

///

Ramos alleges several theories to support her Good Samaritan Doctrine claim: (1) Wells Fargo foreclosed during the HAMP modification process; (2) Wells Fargo failed to offer Ramos a new loan after the 2009 foreclosure allegedly extinguished her existing loan, but instead offered her a new modification and accepted payments under it; (3) Wells Fargo allegedly misfiled the Affidavit of Cancellation of Trustee's Deed by "not recording it against [Ramos's] deed;" and (4) Wells Fargo, knowing that it could not get Ramos a HAMP modification, led her to believe that it could. (Doc. 66 at 13). Ramos alleges that these actions harmed her by (1) requiring her to make payments totaling more than $160,000 on a loan that no longer existed; (2) keeping her credit rating "captive and unnecessarily low"; and (3) causing Ramos to lose an opportunity to refinance her property with a VA loan in 2017. (*Id.*).

The parties do not generally dispute that Wells Fargo undertook to render services to Ramos or that Wells Fargo should have recognized that those services were necessary to protect Ramos' property. The nub of the dispute centers on whether Wells Fargo failed to exercise reasonable care while rendering services to Ramos, and whether any such failure harmed her.

### a. Timeliness of Good Samaritan claims

Negligence actions in Arizona must be brought within two years of the accrual of the cause of action. *Rowland v. Kellogg Brown and Root, Inc.*, 210 Ariz. 530, 532, 115 P.3d 124, 126 (Ariz. Ct. App. 2005) (citing Ariz. Rev. Stat. Ann. § 12-542 (*held unconstitutional for wrongful death actions by Anson v. Am. Motors Corp.*, 155 Ariz. 420, 426, 747 P.2d 581 (Ariz. Ct. App. 1986))). The cause of action accrues when "the plaintiff knows or, in the exercise of reasonable diligence should know the facts underlying the cause." *Tavilla v. Cephalon, Inc.*, 870 F. Supp. 2d 759, 763–64 (D. Ariz. 2012) (citing *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588, 898 P.2d 964 (Ariz. 1995)).

Ramos asserts that she was denied for a refinance with the VA in 2017 on the basis that U.S. Bank was the "trustee of record" for Ramos' property. (Doc. 69 at 5). U.S. Bank

showed as the "trustee of record" because Wells Fargo did not appropriately file its rescission of the 2009 foreclosure of her home. Ramos did not discover this problem prior to 2017 because she had been informed that the rescission had occurred and, relying on that information, continued making payments for several years without ever performing an independent title search. (Doc. 44-1 at 24–25). Ramos filed this action within two years of being denied for the new VA loan based on the misfiling. A Good Samaritan claim based on Ramos' claim that she was unable to refinance her home is therefore not barred by section 12-542.

In response Wells Fargo generally asserts that Ramos's Amended Complaint does not specifically set forth claims pertaining to the 2009 deed of trust sale. It is not entirely clear that this is correct because the Amended Complaint does allege that Wells Fargo "engaged in deceitful, false, and fraudulent acts in preparing and recording the foreclosure documents, and failed to proceed in accordance with the strict requirements of the law." (Doc. 9 at 31). Even assuming that this is not sufficient to present the claim, during discovery theories can be propounded and evidence disclosed in support of theories that are not explicitly set forth in the Amended Complaint. It is for this reason that the civil rules allow even very late amendments to conform to the evidence. Fed. R. Civ. P. 15(b). Wells Fargo does not argue that the Plaintiff did not disclose this theory in discovery; nor does it argue that Plaintiff did not produce evidence in support of it, or that it will be otherwise prejudiced by its assertion. Under such circumstances the preference for deciding cases on their merits militates against disposing of this claim on summary judgment for the reasons advanced by the Defendant. Thus, Ramos continues to assert a Good Samaritan claim about which at the least there remain issues of material fact, and which is not barred by the statute of limitations. The same is not true for the balance of Ramos's claims.

### b. Wells Fargo is entitled to summary judgment on the remainder of Ramos' Good Samaritan claims.

Wells Fargo is entitled to summary judgment on the claim that it failed to offer Ramos a new loan following the 2009 foreclosure and instead executed a new modification.

There is no dispute that following the 2009 trustee's sale, the resulting trustee's deed was rescinded, nor is there a dispute that Ramos was given a copy of the document rescinding that sale. Ramos offers no legal authority for the proposition that a deed of trust sale cannot be rescinded in Arizona, or that such a rescission is ineffective as to her when she was given a copy of the rescission even if it is incorrectly recorded. Courts in this district have recognized the validity of a rescission of a deed of trust by the recording of a similar document. *See Martenson v. RG Financing*, No. CV-09-01314-PHX-NVW, 2010 WL 3724701, at *1 (D. Ariz. Sept. 17, 2010). And under Arizona law, an otherwise-operative legal transfer instrument does not become invalid between the parties simply because it was unrecorded. <u>See</u> Ariz. Rev. Stat. § 33-412(B) ("Unrecorded instruments, as between the parties . . . shall be valid and binding.").

Even if mis-recorded, Maricopa County records indicate that the Affidavit and Cancellation of Trustee's Deed was recorded by the trustee on September 21, 2009. (Doc. 44-4 at 2–3). That instrument stated that the trustee's deed resulting from the trustee's sale on July 31, 2009

> is deemed nullified by the virtue of the fact that client did not intend to proceed with the foreclosure action. . . . Accordingly, at the time of the Trustee's Sale the Trustee did not have a power of sale, and the Trustee's Deed issued to US Bank National Association, as Trustee for the Structured Asset Securities Corporation, Series 2005-GEL2 should not have been issued or recorded.

(Doc. 44-4 at 1). The document concluded by stating that "as Successor Trustee of said Deed of Trust, the undersigned does hereby declare that the Trustee's Deed referred to herein is canceled and void and of no effect." (*Id.*). It also noted that the previous deed of trust (*i.e.*, the one signed by Ramos) "remains a valid lien upon the property, in full force and effect." (*Id.*).

Thus, the evidence establishes that the 2009 foreclosure and trustee's sale did not extinguish Ramos' loan that was secured by the property. And Wells Fargo did not "steal" $160,000 by tricking Ramos into making payments on a loan that was extinguished, in light of the rescission of the trustee's sale.

Wells Fargo is similarly entitled to summary judgment on Ramos' theory that Wells Fargo failed to exercise reasonable care by telling Ramos she could receive a HAMP modification when it knew that she did not qualify for one. Ramos bases her claim on Wells Fargo's asserted knowledge, based on her credit report, that she had already received a HAMP modification for a different loan secured by a different property.

But Ramos points to no evidence that Wells Fargo had her credit report prior to the time she alleges that Wells Fargo made those representations. The testimony Ramos cites establishes only that as a general rule, lenders should check the credit report of an applicant. (Doc. 67-2 at 11). Ramos points to no evidence that she refinanced her loan with Wells Fargo in 2006. Instead, Ramos testified that Wells Fargo took over servicing her loan at some point after her refinance with WMC Mortgage. (Doc. 44-1 at 18). And even if Wells Fargo had somehow obtained Ramos' credit report in 2006, the report could not have shown the HAMP modification that Ramos acquired years later from another lender. At any rate, in 2015 Ramos affirmatively misrepresented to Wells Fargo that she had never previously received a HAMP modification on any other loan. (Doc. 44-1 at 50).

Ramos has pointed to no evidence that Wells Fargo knew that she did not qualify for a HAMP modification before it received word from the Treasury Department that Ramos had a previous HAMP modification and therefore did not qualify for another. She likewise has failed to point to evidence that Wells Fargo promised that she would receive a HAMP modification. Rather, Ramos' testimony is that Wells Fargo employees told her that she "would probably qualify" and that she "might qualify." (Doc. 44-1 at 42).

Next, Wells Fargo is entitled to summary judgment on Ramos' claim that Wells Fargo's 2009 foreclosure was "illegal" because she was in the process of having a HAMP application reviewed on the home. The undisputed facts establish that the foreclosure was rescinded. Ramos presents no evidence that the rescission was legally deficient, only that it was not properly recorded. Thus, even if the 2009 foreclosure was somehow unlawful because a HAMP application was pending (which the Court does not decide), the rescission

resolved the issue.[4]

Similarly, Wells Fargo is entitled to judgment in its favor on Ramos' claim that Wells Fargo is liable because it gave Ramos a predatory "special forbearance" in 2009. Ramos presents no evidence and cites no caselaw supporting the contention that Wells Fargo breached any duty by offering Ramos a forbearance rather than proceeding with the foreclosure that was warranted under the terms of the existing agreement. Ramos does not dispute that she had fallen behind in her payments under the agreement. (Doc. 69 at 3). It was therefore not a breach for Wells Fargo to offer her a special forbearance instead of foreclosing, even if the terms of the forbearance would have been difficult for Ramos to meet.[5]

Finally, Wells Fargo is entitled to summary judgment on Ramos' claim that Wells Fargo promised her that she could get a second loan modification that would lower her monthly payments and then failed to approve her for such a modification. Ramos signed a modification agreement with Wells Fargo soon after the trustee's sale in 2009. That agreement decreased her interest rate but raised her monthly payments. Ramos testified that Wells Fargo told her she would "probably qualify" for another modification and that Wells Fargo "would be back to [Ramos] within 30 days." (Doc. 44-1 at 42). She also testified that she received these reassurances and invitations from Wells Fargo to apply for another loan modification "over and over" during that time. (*Id.*). Wells Fargo has pointed out that aside from those statements by Ramos, there is no other evidence in the record establishing that Ramos received assurances from Wells Fargo that she would be able to receive any further modifications on the loan.

Ramos' testimony is insufficient to establish a genuine issue of material fact on this claim. A statement from Wells Fargo that Ramos would "probably qualify" for another

---

[4] This claim is also time-barred, since as a Good Samaritan claim it is a negligence claim, and such claims must be brought within two years of the accrual of the cause of action. *Rowland*, 210 Ariz. at 532. Since Ramos was aware of the foreclosure and rescission in 2009, this action is well beyond the two-year limit.

[5] This claim, like the previous claim, is also time-barred since Ramos was aware of the special forbearance in 2008 and the limitations period has now run.

modification, even when coupled with the fact that she signed a modification that increased her monthly payments when she already could not afford her current payments, is not sufficient. There is no evidence that Wells Fargo promised Ramos that she would receive a further modification.

Regarding these theories, Ramos has not pointed to evidence from which a reasonable juror could conclude that Wells Fargo failed to exercise reasonable care, so the claim must fail. Since there is no dispute of material fact and Wells Fargo is legally entitled to judgment in its favor, summary judgment is granted on these Good Samaritan claims.

    c. **There are disputes of material fact regarding some of the Good Samaritan theories.**

Wells Fargo is not entitled to summary judgment on Ramos' theory that Wells Fargo is liable under the Good Samaritan doctrine because it misfiled the Affidavit of Cancellation of Trustee's Deed by "not recording it against [Ramos's] deed." Ramos alleges that Wells Fargo failed to properly file the Affidavit of Cancellation that rescinded the trustee's sale of Ramos' property in 2009. This is because, she alleges, the affidavit was not recorded under Ramos' name, and therefore does not appear in a title search of the property. Ramos also points to evidence that records from the Maricopa County Assessor's Office indicate that U.S. National Bank is currently being assessed property taxes for the property, rather than Ramos. (Doc. 67-2 at 35).

A reasonable jury could conclude from that evidence, together with evidence that Ramos was denied a new VA loan in 2017 because U.S. Bank was the "trustee of record" for her property, that Wells Fargo failed to exercise reasonable care in its filing of the affidavit. A reasonable juror could also conclude that by doing so Wells Fargo increased the financial risk to which Ramos was exposed and that she was injured by the latest foreclosure proceedings instituted as a result of her failure to obtain the new VA loan. Since Ramos points to evidence that establishes a dispute of material fact, summary judgment is not appropriate on this claim.

/ / /

## 2. Fraudulent Misrepresentation Claim

To prevail on a claim of fraudulent misrepresentation, Ramos must establish that (1) Wells Fargo made a statement (2) that was false (3) and material; (4) Wells Fargo knew it was false or was ignorant of its truthfulness; (5) Wells Fargo intended that Ramos act upon the statement; (6) Ramos was ignorant of the false nature of the statement; (7) Ramos actually relied on the truth of the statement and (8) she had a right to do so; and (9) Ramos was consequently and proximately injured. *See Narramore v. HSBC Bank USA, N.A.*, No. 09-CV-635-TUC-CKJ, 2010 WL 2732815, at *9 (D. Ariz. July 7, 2010) (citing *Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 494, 803 P.2d 900, 905 (Ariz. Ct. App. 1990)).

Ramos alleges multiple theories on which she bases her fraudulent misrepresentation claim. She alleges that (1) Wells Fargo misrepresented to her that her loan existed following the 2009 foreclosure sale and subsequent rescission and that Wells Fargo therefore induced her to continue to make payments on a loan that no longer existed; (2) Wells Fargo made false statements regarding Ramos' ability to qualify for a HAMP or in-house modification, and continued to mislead her for years by telling her that the modification was "all but granted;" (3) Wells Fargo falsely told Ramos that she did not qualify for a modification because she failed to submit proper documentation when in fact she already had submitted such documentation; (4) Wells Fargo misrepresented to Ramos that she needed to wait three months before appealing its denial of her modification application; and (5) Wells Fargo wrongfully denied her re-modification application because she failed to provide tax documentation.

For the reasons outlined below, Wells Fargo is entitled to summary judgment on all these theories of fraudulent misrepresentation.

Wells Fargo is entitled to summary judgment on Ramos' fraudulent misrepresentation theory that her loan ceased to exist following the 2009 foreclosure and rescission, and that Wells Fargo lied to her to cover up that fact so that she would continue to make payments on the loan. As previously discussed, a valid rescission of the trustee's sale was recorded with Maricopa County soon after the sale, and Ramos was aware of the

rescission.

Wells Fargo is likewise entitled to summary judgment on Ramos' theory that Wells Fargo falsely told Ramos that she had failed to provide documentation when she already had. Ramos herself testified that each time she received such a request from Wells Fargo, she simply responded by providing the missing documents again. (Doc. 44-1 at 87). Ramos has not pointed to evidence establishing that Wells Fargo denied her a modification on these grounds.

Wells Fargo is also entitled to summary judgment on Ramos' theory that Wells Fargo told Ramos that she had to wait at least three months to appeal Wells Fargo's denial of her modification application. Ramos has pointed to no evidence that Wells Fargo told her to wait three months or that Wells Fargo suggested that she pursue appeals that it knew to be frivolous. Ramos' testimony is that Wells Fargo told Ramos that she could appeal its denials of her applications, and that Ramos did so. (Doc. 44-1 at 75). That testimony also establishes that Wells Fargo never made any promises that such appeals would be successful, (*id.* at 75–76), and that Wells Fargo put the 2016 foreclosure on hold while Ramos pursued the appeals. (*Id.*).

Summary judgment is likewise appropriate on Ramos' theory that Wells Fargo denied her modification application on the grounds that she failed to provide her tax returns. Ramos does not address this issue in either her response to Wells Fargo's motion or in her own cross motion for summary judgment. She has therefore waived the argument and failed to demonstrate a genuine issue of material fact regarding the claim. *See Sandoval v. Los Angeles County*, No. CV 90-3428 PSG (SSx), 2010 WL 11545547, at \*11 (C.D. Cal. April 4, 2010) (noting that failure to address an argument in response to motion for summary judgment waives opposition to it).

Finally, Wells Fargo is entitled to summary judgment on Ramos' claim that Wells Fargo intentionally made false statements that Ramos could qualify for a second modification (HAMP or in-house) and thereby induced her to sign a modification with payments higher than her current payments—which she could not afford. As previously

discussed, Ramos points to no evidence that Wells Fargo promised that she would receive a second modification. Though Ramos did testify that she was told that she would "probably qualify" and was encouraged by Wells Fargo to apply for a modification, there is no evidence in the record from which a juror could conclude that Wells Fargo made a false, material statement. There is thus no dispute of material fact on this claim. For each of these theories of fraudulent misrepresentation, Ramos has failed to point to facts sufficient to demonstrate a genuine dispute of material fact. Wells Fargo is entitled to judgment in its favor on these theories.

### 3. Declaratory Judgment

Wells Fargo is entitled to summary judgment on Ramos' declaratory judgment claim. Ramos does not directly address this claim in her own motion or in her response to Wells Fargo's motion. Her responses to Wells Fargo's interrogatories suggest that she seeks a declaratory judgment that Wells Fargo cannot proceed with the pending foreclosure on her property because U.S. Bank owns the property today as a result of the 2009 foreclosure. As previously noted, she provides no legal basis for her claim and has pointed to no evidence to support it. Wells Fargo has provided the affidavit of cancellation that it filed with the Maricopa County Recorded that rescinded the trustee's sale in 2009. (Doc. 44-4 at 2–3). Ramos does not show why the rescission was ineffective as to her. Accordingly, there is no dispute of material fact regarding this claim, and Wells Fargo is entitled to judgment in its favor as a matter of law.

### 4. Punitive Damages

Finally, summary judgment is appropriate on Ramos' punitive damages claim. Punitive damages require "something more" than simply demonstrating that a tort occurred. *See Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 478 (1986) (en banc). "The requisite 'something more,' or 'evil mind,' is established by [clear and convincing] evidence that [the] defendant either (1) intended to injure plaintiff or (2) consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Gurule v. Illinois Mut. Life and Cas. Co.*, 152 Ariz. 600, 602,

734 P.2d 85, 87 (1987) (en banc) (citations and internal quotation marks omitted).

The evidence in this case is insufficient to support a claim for punitive damages. Although the evidence is sufficient to support a Good Samaritan claim based on Wells Fargo's failure to properly file the rescission of the deed of trust resulting from the 2009 foreclosure, that evidence does not support that Wells Fargo intended to injure Ramos or that it "consciously pursued a course of conduct knowing that it created a risk of significant harm to others." *Id.* Ramos fails to point to evidence that could establish that Wells Fargo acted with the requisite "evil mind" needed to sustain a claim for punitive damages. Wells Fargo is therefore entitled to summary judgment on this claim.

### B. Ramos' Cross Motion for Summary Judgment

As the foregoing discussion shows, there are disputes of material fact regarding one of Ramos' Good Samaritan claims, and Wells Fargo is entitled to summary judgment on the remainder of her claims. For that reason, Ramos is not entitled to summary judgment in her favor on any of the claims.

**IT IS THEREFORE ORDERED** that Defendant Wells Fargo Home Mortgage's Motion for Summary Judgment (Doc. 43) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Motion is **DENIED** regarding Ramos' Good Samaritan claim that Wells Fargo is liable under the Good Samaritan doctrine because it misfiled the Affidavit of Cancellation of Trustee's Deed by "not recording it against [Ramos'] deed."

2. The Motion is **GRANTED** on all of Ramos' other claims.

**IT IS FURTHER ORDERED** that Plaintiff Bonnie T. Ramos' Cross Motion for Summary Judgment (Doc. 66) is **DENIED**.

Dated this 26th day of March, 2019.

_____
G. Murray Snow
Chief United States District Judge